IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Docket No. 2:26-cr-68 |
| | * | 2:26-cr-69 |
| | * | |
| | * | |
| VERSUS | * | February 19, 2026 |
| | * | |
| | * | |
| | * | |
| CARTER MILES LEDOUX | * | Lake Charles, Louisiana |

*************************************************************

OFFICIAL TRANSCRIPT OF INITIAL APPEARANCE/
ARRAIGNMENT/APPEAL OF DETENTION HEARING
HELD BEFORE THE HONORABLE JAMES D. CAIN, JR.,
UNITED STATES DISTRICT JUDGE

*************************************************************

**A P P E A R A N C E S**

FOR THE GOVERNMENT: THOMAS JOHNSON
U.S. Attorneys Office
800 Lafayette Street, Suite 2200
Lafayette, LA 70501

FOR THE DEFENDANT: ADAM PATRICK JOHNSON
ANDREW THOMAS LEONARDS
Johnson Firm
1419 Ryan Street
Lake Charles, LA 70601

REPORTED BY: DEIDRE D. JURANKA, CRR
USDC - Western District of LA
611 Broad Street
Lake Charles, LA 70601

01:15PM **COURT PROCEEDINGS**

01:38PM (Call to Order of the Court.)

01:44PM THE COURT: All right. This is the United States versus Carter Miles Ledoux, Criminal Action 26-cr-68 and Criminal Action 26-cr-69. If I could have counsel make their appearances, please.

01:45PM MR. JOHNSON: Good afternoon, Your Honor. Thomas Johnson for the United States. I'm joined at counsel table by Criminal Chief Allison Duncan and Special Agent Andrew Doxtator.

01:45PM MR. JOHNSON: Adam Johnson here on behalf of my client, Your Honor. Mr. Andrew Leonards is also enrolled in the matter.

01:45PM THE COURT: Thank y'all. We're going to do -- we've got two things. I've got to take up the appeal from the magistrate on his detention; but also, we have a new Indictment. So I'm going to go ahead and handle his initial appearance, we'll do that first, and arraignment and then we'll just go into the next.

01:45PM All right. So if I could, hey, Patrice, why don't you swear the defendant in, please.

01:45PM (Oath is administered.)

01:45PM THE COURT: You can be seated. Can I go ahead and get you to give me your name for the record, your complete name.

01:45PM THE DEFENDANT: Carter Miles Ledoux.

01:46PM THE COURT: Okay. Thank you. All right. Mr. Ledoux, you were before the Court previously, the magistrate, having been arrested on a Complaint filed by the FBI. And today you're here for an initial appearance and arraignment because you've been indicted by a Grand Jury sitting in the Western District of Louisiana.

In Case No. 26-cr-68, you are charged with Count 1, 18 U.S.C. Section 371, conspiracy to commit offenses against the United States; Count 2, 18 U.S.C. Section 2261A(2)(B), cyber stalking; Count 3, 18 U.S.C. 875(c), transmitting threats through interstate commerce; Count 4, 18 U.S.C. Section 844(e), threat to damage or destroy by means of explosive.

Also, in Case No. 26-cr-69, you are charged in Count 1, 18 U.S.C. Section 2252A(5)(B), possession of child pornography.

01:47PM Mr. Ledoux, are you the defendant being charged in the Indictment, yes or no?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. I'm going to briefly go over the penalties for these crimes as follows.

In Case No. 26-cr-68, as to Count 1, an imprisonment term of not more than five years, a fine of

01:47PM up to $250,000, supervised release, a term not to exceed
01:47PM three years, and a special assessment of $100. As to
01:47PM Count 2, an imprisonment term of not more than five
01:47PM years, a fine of up to $250,000, supervised release term
01:47PM not to exceed three years, and a special assessment of
01:47PM $100. As to Count 3, an imprisonment term of not more
01:47PM than five years, a fine of $250,000, a term of
01:48PM supervised release not to exceed three years, and
01:48PM special assessment of $100. As to Count 4, an
01:48PM imprisonment term of not more than 10 years, fine up to
01:48PM $250,000 a term of supervised release not to exceed
01:48PM three years, and a special assessment of $100.
01:48PM In Case 26-cr-69, as to Count 1, an imprisonment --
01:48PM term of imprisonment not more than 20 years, a fine of
01:48PM up to $250,000, a term of supervised release not to
01:48PM exceed three years, a special assessment of $100.
01:48PM Mr. Ledoux, you have the right to be represented by
01:48PM an attorney throughout these proceedings. If you cannot
01:48PM afford an attorney, one will be appointed for you. I
01:48PM see that you do have counsel with you, Mr. Johnson.
01:48PM It's my understanding that you have retained him and
01:48PM Mr. Leonards as your counsel. Is that correct?
01:48PM THE DEFENDANT: Yes, sir.
01:48PM THE COURT: Okay. Let me explain to you some
01:49PM rights as has been explained to you previously by the

01:49PM Court.

01:49PM You have the right to remain silent. You have no obligation to speak with any representative of the Government about the charges against you; and if you have spoken with them already, that does not mean you need to speak to them again. If you choose to speak with them, you have the right to terminate the interview at any time. Do you understand the right to remain silent, Mr. Ledoux?

01:49PM THE DEFENDANT: Yes, sir.

01:49PM THE COURT: Now that I've explained these rights to you, any statements you do make can be used against you. Do you understand this, Mr. Ledoux?

01:49PM THE DEFENDANT: Yes, sir.

01:49PM THE COURT: All right. You're entitled to have the Indictment read -- the Indictment -- counts of the Indictment read to you. Would you like a formal reading of the Indictment or do you waive the formal reading?

01:49PM MR. JOHNSON: We'll waive formal reading.

01:49PM THE COURT: Okay. Thank you, Mr. Johnson. Mr. Johnson, have you had an opportunity to review the Indictment against Mr. Ledoux?

01:49PM MR. JOHNSON: I have.

01:49PM THE COURT: Mr. Ledoux, do you understand the nature of the charges contained in the Indictment and

01:49PM the maximum penalties of the charges?

01:50PM THE DEFENDANT: Yes, sir.

01:50PM THE COURT: All right. As in Case No. 26-cr-68, Mr. Ledoux, as to Counts 1 through 4, how do you plead to those counts, guilty or not guilty?

01:50PM THE DEFENDANT: Not guilty.

01:50PM THE COURT: Okay. In Case No. 26-cr-69, as to Count 1, how do you plead, guilty or not guilty?

01:50PM THE DEFENDANT: Not guilty.

01:50PM THE COURT: Okay. I will order -- since you've entered a plea of not guilty, there will be a need for a pretrial criminal scheduling conference. There will be a scheduling conference set for March 16th, 2026 at 3:30 before the magistrate judge. Okay. All good with everybody?

01:51PM MR. JOHNSON: Yes, Your Honor.

01:51PM THE COURT: You sure? Good with Government?

01:51PM MR. JOHNSON: Yes, Your Honor.

01:51PM THE COURT: All right. Now, it's my understanding that there's an appeal of the magistrate judge's decision as to detention, and I believe we're going to move into that now; is that correct?

01:51PM MR. JOHNSON: Yes, Your Honor. Now that the Indictment --

01:51PM THE COURT: Hold on one second. Go ahead, sir.

01:51PM I'm sorry.

01:51PM MR. JOHNSON: Your Honor, this matter is still technically still under seal. At this time the Government would move to unseal the case except as to two items, the first being the Complaint and associated affidavit and the second would be the detention hearing itself. And the reason we would like to keep those two things -- or the transcript in proceedings of the former detention hearing.

01:52PM THE COURT: You want to keep the transcript of the detention hearing last week under seal?

01:52PM MR. JOHNSON: Yes, Your Honor. And the reason is victim PII. The victims were referred to by their initials. And after some consultation with our supervisors, we'll be moving forward referring that to --

01:52PM THE COURT: And you want the Complaint kept under seal as well?

01:52PM MR. JOHNSON: Yes, Your Honor.

01:52PM THE COURT: What's your position? Any objection?

01:52PM MR. JOHNSON: I don't think I have an objection, Your Honor.

01:52PM THE COURT: All right. Those two items will remain under seal.

01:52PM We're going to have -- I've reviewed that

transcript in detail. It's quite long. So we're going to have the -- I don't think we need a new detention hearing because of the new Indictment. We're just going to continue on, but I'm going to have arguments here on the appeal of the magistrate's ruling in that case. Here's the ground rules for this from my perspective.

I've read the transcript of that detention hearing, okay, so I understand the evidence that was presented to the magistrate. What I really am interested in now, since we do have a new Indictment, new things to consider in addition to that transcript, I will allow -- if you have any additional information you want to present to me, I will allow y'all to present it to me. But I don't really need to go back over everything that was presented to the magistrate. I've read all that. That's in the record.

MR. JOHNSON: Understood, Your Honor.

THE COURT: Everybody on the same page? Okay. Well, since this is your appeal, you get to go first.

MR. JOHNSON: May I approach?

THE COURT: Yeah. Sure. You can do it at the table, approach. It doesn't matter to me. Wherever you're most comfortable.

MR. JOHNSON: Your Honor, I did want to put up one exhibit on ELMO.

THE COURT: Yeah, that's fine. Listen, I'm assuming you don't want this hearing under seal, right?

MR. JOHNSON: This one should be all right, Your Honor, as long as no one refers to the victims by their initials.

THE COURT: All right. Mr. Johnson, Mr. Leonards, just refrain from referring to the victim by her initials.

MR. JOHNSON: I don't even know who it is.

THE COURT: Yeah. I guess we all know the initials. I guess they're just saying let's not use the initials.

MR. JOHNSON: Yes, sir.

THE COURT: Go ahead, sir.

MR. JOHNSON: Thank you, Your Honor. So this is a de novo review under 3145. As Your Honor pointed out, you can consider new evidence. This is a clean slate operating off of the previous testimony that was heard before the magistrate.

In terms of new evidence, the Indictment is the most important thing here. There are several new charges including a fully pleaded domestic terror conspiracy and a CSAM charge. There are new statutory maximums that Your Honor may and should consider. 844(e) carries a 10-year statutory maximum and the 2252A

01:55PM charge has a 20-year statutory maximum because it involves prepubescent children. These are relevant to risk of flight and insofar as Congress has created higher maximums that suggest that there's greater community danger that Your Honor should consider.

01:55PM I'm not going to rehash the evidence or the prior arguments; but in terms of the 3142(g) factors, you know, within each of these four subsets, the magistrate found that the first two point towards detention. I would argue that when Your Honor considers that testimony it's not just the first two point towards detention, it's that they heavily point towards detention. The nature and circumstances of the offense involve a racial terror conspiracy against a juvenile. The weight of the evidence is overwhelming. The defendant has confessed, and the IP addresses associated with many of these threatening contacts point to his home.

01:56PM Prong -- or the factor -- the third and fourth factors under 3142(g), that is where I think that the argument lies. And here, I would say the defendant's character is really what stands out under the third factor. He has an unhealthy obsession with racial violence, mass murder, extortion, and child pornography. This greatly outweighs family ties, community ties, to

the extent that they exist. And then regarding his danger to the community, the evidence shows that he has glorified Dylann Roof. Dylann Roof is a convicted mass murderer who is presently sitting on death row. It is hard to imagine stronger evidence that points towards a danger to the community than that.

In terms of new arguments, one thing that I wanted to suggest to Your Honor is Probation and their take on this. Before we came to the detention hearing, Probation recommended -- found that there was no combination of conditions that could safely justify release. That is a big deal because Probation made that finding before the detention hearing and all of these exhibits showing videos of racial violence, glorification of mass murder, CSAM. When you consider that they made their assessment and found that there was no combination of conditions before they knew that he had these impulses, it tends to show that their perspective, their assessment of these kinds of situations, if it was close before, it was nowhere near close after the detention hearing itself.

And I would also point out, this did not come up, but insofar as conditions are being devised, the defendant's parents were there and they heard the magistrate lay out here are the conditions that you'll

be living under. The defendant has a little brother and that little brother presumably has devices of his own. And I don't know if Your Honor had siblings; but when I was younger, me and my brother, we were thick as thieves. And it's hard to imagine a minor little brother being able to live up to conditions, keeping his older brother away from the phone if his older brother should ask.

And then, Your Honor, of the exhibits that came in, this one I think stands out most. So this is Government's 13, and Special Agent Doxtator testified regarding this. Your Honor, this is the first, second screenshot of a video showing a black man's head being blown off with a shotgun. There were several variations of this video found on the defendant's phone, and this video is consistent with over a hundred other videos glorifying racial violence and mass murder. I would suggest that when Your Honor considers the danger to the community that you think about this exhibit in particular and you think about the fact that it is representative of hundreds of other videos that the defendant has consumed, downloaded onto his phone, much less the ones that he has streamed and not downloaded onto his phone itself.

We'd rely on the other arguments presented at the

prior detention hearing. No further argument from the Government unless you have particular questions.

THE COURT: No, no. We've looked at a lot of videos. They were very disturbing. I don't think we looked at this one, though; but we did see some others.

Mr. Johnson, Mr. Leonards, whoever would like to address the Court.

MR. JOHNSON: I don't think there's anything new been added to the question except maybe the findings from the probation officer. The judge had that information. I challenge anybody to find a better, more articulate, thorough ruling walking through each of the individual findings from a court, period. However the magistrate is selected, however that process was done, it was clearly done extremely well because the judge walked through each of the factors specifically, weighed the evidence.

And in response to the Government's argument that character trumps everything. Because that's the truth, we can all give our cell phones to Big Brother and then that's how our character's judged. I hope not because everybody's got stupid stuff on their phone. What the evidence showed is that those pictures, those videos, they were without context completely, not what was said before, what was said before, whether or not these were

actually saved, whether they're from a cache of files, whether or not he viewed them, just scrolled them, or whether he actually downloaded them onto the phone.

My client never glorified Dylann Roof. They couldn't provide any context to that whatsoever. There's just evidence of a possible video on his phone. We don't know how it got there, and they can't explain how it got there. He didn't glorify Dylann Roof. They didn't say he shared that photo, shared that video, none of that.

Now his little brother is a danger to society, I guess, because of his association with his older brother. There couldn't have been any better testimony from my client's mother that said she'd have no problem calling the police. She looked the judge right in the face. That's all exhibited in the record.

What they're trying to do is keep a 19-year-old boy in jail pending trial as leverage. I asked the FBI agent on the witness stand: You want him to cooperate so you are using this as leverage? After a couple of objections, we finally got the answer: Yes, that's one of the reasons we are seeking detainment.

We had eight months of time. My client's arrested. He posts bond on a $30,000 bond in St. Tammany Parish. He goes to every single court date. He doesn't get in

any trouble whatsoever. He shows up and surrenders himself. His mom drives three and a half hours back and forth to St. Tammany. They go to all the court dates. Nothing happens for eight months. But suddenly now, because it's the Federal Government, oh, they're a danger to society. Thank God we got past those eighths months. I refuse to live that scared.

And there's no reason in this case to take a 19-year-old's phone and say, oh, we've got tremendous -- this is -- he's not a threat to society. He's been out for eight months. We have a body of work to look at. We have his mom. We put on evidence he's been diagnosed with a mental defect. His mom has the perfect job. She stays home, she works from home and can watch him.

And we have a judge who considered all this evidence and gave one of the most articulate rulings I've ever seen in a case on Your Honor's behalf. I think it should be upheld without question because there's no new evidence. He's 19 years old. They have evidence that he sent a text message. That's it. The evidence doesn't show that he actually called the police. He sent a text message and he has some bad videos on his phone. That now, a bad text message and some bad videos on a phone, that now keeps you in custody even though you have eight months that you

complied, cooperated?

He even talked to the police with St. Tammany. I've told them he's going to cooperate, probably. We're not fighting. This is a unique case in the sense that he was out for eight months. We know how he acts. We know the job that his mom can do. There's no reason for this young man, who I would remind the Court the law still protects from the purchase of a pack of cigarettes, to be held in prison given Judge LeBlanc's very thorough, articulate ruling that I think should be upheld for the same reason. Thank you, Judge.

THE COURT: Okay. Anything else?

MR. JOHNSON: Nothing from the Government, Your Honor.

THE COURT: I've reviewed the record. I've reviewed the magistrate's ruling. I've looked at all of the evidence. By the way, thank you. I got a -- so I'm clear on the record, I got a brief from defense counsel. Thank you for the brief, it was well-written, I appreciate that, on the revocation release order. However, after a de novo review of the record and considering all the relevant factors set forth in 18 U.S.C. Section 3142(f), I find that the Government has carried its burden showing the defendant poses a serious danger to others in the community and no combination of

02:06PM conditions would reasonably mitigate those risks.

02:06PM The videos show graphic violence with a proclivity 02:06PM for child pornography, this along while living with his 02:06PM parents, who I understand what you're saying, but he's 02:06PM living with his parents and y'all are articulating to 02:06PM this Court that he has some type of illness but yet his 02:06PM phone was allowed to have this type of stuff on it. I 02:06PM don't have faith in the supervision of the third-party 02:06PM custodian of the parents at this point based upon what 02:06PM is on that phone and how long it's been on that phone.

02:06PM Furthermore, he's admitted to a -- he admitted to a 02:06PM dedicated extortion online three or four times. He's 02:06PM involved in sophisticated tools to hide his identity 02:07PM from others. He has -- I think all of those things, 02:07PM based upon my review of the record and those factors 02:07PM that are contained in 3142, I overturn the magistrate's 02:07PM ruling and the defendant will be detained pending trial.

02:07PM Anything else?

02:07PM MR. JOHNSON: Nothing from the Government, Your 02:07PM Honor.

02:07PM MR. JOHNSON: Discovery as soon as possible in the 02:07PM case.

02:07PM THE COURT: Yes. Y'all be sure to turn over any 02:07PM Brady material, anything of that nature. I don't know 02:07PM if we're there yet. Are y'all going to try to invoke

02:07PM your right to a speedy trial? I mean, I could deem this
02:07PM case complex, so. It's pretty complex.

02:07PM MR. JOHNSON: I don't know what we're going to do,
02:07PM Your Honor. I just want discovery as soon as possible
02:07PM because I don't have any of it. I keep hearing
02:07PM allegations --

02:07PM THE COURT: Get that discovery pretty quick. Okay.
02:08PM Well, y'all know when the scheduling conference is with
02:08PM the magistrate, so we'll go from there. Okay. All
02:08PM right. We're adjourned. Thank y'all.

02:08PM (Proceedings adjourned for the day.)

* * * * * * *

**CERTIFICATE**

I hereby certify this 26th day of February, 2026 that the foregoing is, to the best of my ability and understanding, a true and correct transcript of the proceedings in the above-entitled matter.

Deidre D. Juranka

Deidre D. Juranka, CRR
Official Court Reporter